# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

| | | |
|---|---|---|
| LEAD GHR ENTERPRISES, INC. formerly d/b/a GOLDEN HILLS RESORT, | ) | Civ. 16-5026-JLV |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPLY MEMORANDUM IN SUPPORT** |
| AMERICAN STATES INSURANCE | ) | **OF PLAINTIFF'S MOTION FOR** |
| COMPANY, | ) | **PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff, Lead Golden Hills Resort, Enterprises, Inc. ("Lead GHR"), by and through its counsel of record, hereby respectfully offers this Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment. This is offered to address the issues raised in Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Defendant's "Response"). (Document "Doc." 57).

## Introduction

Plaintiff's Motion for Partial Summary Judgment (Doc. 51) seeks summary resolution of the "enforceable promise" or "duty" element of Count I of the Complaint -- Breach of Contract. *Id.,* p. 1. In other words, Plaintiff's motion seeks summary resolution on the issue of whether the retaining wall is covered property under the Policy.[1] Because contract interpretation is a duty of the Court, not the jury, Rule 56 is an appropriate method of resolving the issue of whether the retaining wall is covered property.  Fed. R. Civ. P. 56. Defendant's argument against Plaintiff's

---

[1] A full copy of the insurance policy at issue, No. 01-C1-327361-1, is attached as exhibit "B," to the Affidavit of Nathan R. Oviatt, dated June 1, 2018. Citations to attachments will be made as (Doc. 54-__). Citations to the attachments to the Second Affidavit of Nathan R. Oviatt, dated June 29, 2018, will be made as (Doc. 64-__).

1

Motion is bizarrely hostile.  The plain language of Rule 56 (a) allows such "partial" motions for summary judgment.

Rule 56(a) provides:

A party may move for summary judgment, identifying each claim or defense — *or the part of each claim or defense* — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

*Id.* (emphasis added).

As discussed, Plaintiff's motion seeks resolution of only "part of" Count I of its Complaint -- Breach of Contract.  (Doc. 52, p. 1). "[T]he elements of breach of contract are: 1. An enforceable promise; 2. A breach of the promise; 3. Resulting damages." *Guthmiller v. Deloitte & Touche, LLP,* 2005 SD 77, ¶ 14, 699 N.W.2d 493, 498. Again,  Plaintiff  has  not moved for summary judgment on the second two elements of Count I, because it concedes that fact questions remain to be determined by the jury on these issues. (Doc. 52, p. 5). Specifically, the jury must resolve the factual dispute between the parties as to what actually caused the retaining wall to collapse.  Resolution of the causation question will also resolve the issue of Defendant's breach, and Lead GHR's resulting damages.  However, these questions are not presented by this motion.[2]

The only element of Plaintiff's Complaint included in Plaintiff's Motion is the element of "an enforceable promise" and whether the promise of coverage made by Defendant included the promise of coverage for the retaining wall which collapsed. Because "[i]nsurance contract

---

[2] In its Motion for Summary Judgment, or Alternatively, Partial Summary Judgment, Defendant has asked the Court to summary decide these fact questions. (Doc. 44). Because these issues require a weighing of competing evidence from conflicting opinions of the parties' respective experts, summary judgment on these issues is inappropriate. (Doc. 60).

interpretation is a question of law," *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, 822 N.W.2d 724, 726, the issue of "duty" is ripe for summary resolution.[3] In the event this matter is tried, it will be helpful to the Court, the parties, and the jury, to have this issue resolved now, rather than on the eve of trial. The jury will only be confused by testimony regarding this *legal* issue, F.R.E. 403, therefore, resolution by summary motion is the most appropriate and efficient means of resolving this aspect of the claim.

In addition to the question of Defendant's duty to Lead GHR, there are a handful of additional questions of contract interpretation for which summary resolution would expedite the parties' (and the Court's) preparation for trial.  Many of those issues are presented by both parties' competing motions for summary judgment (Docs. 43 & 51). Despite Defendant's criticism of the procedure in which these issues were presented, these issues clearly rest on a foundation of contract interpretation, which a jury cannot decide. *Ass Kickin Ranch, LLC, supra.* Moreover, because the questions of contract interpretation on matters such as the "anti-concurrent causation" clause are mirrored by Defendant's Motion for Summary Judgment, it would be judicially *inefficient* to stall resolution.  Despite Defendant's protestations to the contrary, Rule 56 is the appropriate means of resolving the question of duty.

In addition, Defendant contends that coverage in this case does not exist because:

(1) the wall that collapsed was not attached to -- and not "part of" -- the covered "building";

---

[3] Defendant argues that summary judgment should be denied because the loss was caused by a non-covered peril. (Document 57, p.1).  However, this issue is not before the Court on this motion.  Normally, the issue of "causation" in a breach of contract action goes to the "damages" element of the cause of action.  *See Bowes Construction, Inc. v. SD Dept. of Transp.*, 2010 SD 99, ¶ 21, 793 N.W.2d 36, 43.  Here, the issue of whether decay or water pressure actually caused the collapse remains to be determined by the fact finder. If the retaining wall is covered, and the loss was caused by decay, then Defendant has breached its promise, and Lead GHR has suffered damages. If the wall was either not covered property, or collapsed by an uncovered cause, then Defendant has not breached its promise. These are the questions that are yet to be determined by the jury. They have intentionally been omitted from this motion because of the remaining fact questions.

3

(2) The loss was caused by a non-covered peril;

(3) Any coverage granted under the "Additional Coverage -- Collapse" provision is subject to the Policy's exclusions and limitations; and,

(4) Plaintiff's factual concessions confirm that the "Additional Coverage -- Collapse" provision cannot apply.

(Doc. 57, at p. 1). For the most part, each of these arguments have already been addressed by Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, (Doc. 52), or Plaintiff's Response to Defendant's Motion for Summary Judgment, or Alternatively, Partial Summary Judgment. (Doc. 60). Rather than rehash each of those arguments here, Plaintiff will address only those arguments and authorities not previously discussed.  To the extent there is overlap between these issues, and those discussed in earlier briefs, Plaintiff incorporates those arguments and authorities by reference.

<u>FACTUAL BACKGROUND</u>

The facts of this case have been discussed at length in the parties' Motions for Summary Judgment and Partial Summary Judgment (Docs. 44 & 52), as well as their respective Responses (Docs. 57 & 60). Because those documents are incorporated herein by reference, Lead GHR will not repeat those facts here, except as to instances in which Defendant has misrepresented facts clearly established in the record.

<u>DISCUSSION</u>

**1. The Wall Was "Part of the Building."**

Defendant attempts to distort Lead GHR's argument with respect to the wall's coverage. Defendant urges the Court to find that the wall merely supported the parking lot, rather than the building.  This argument is misguided for a number of reasons.

First, Defendant renounces its admissions during this litigation in order to argue that the retaining wall was not attached to the building. (Doc. 54-5, Rule 30(b)(6) Deposition of American States Insurance Company ("ASIC 30(b)(6) Depo."), at 38:17-25, 39:1-4). In so doing, Defendant attempts to create a better set of facts than its own testimony.   Such tactic is fundamentally unfair, *Dartt v. Berghorst*, 484 N.W.2d 891, 897 (S.D. 1992), and should be rejected.

Second, this argument assumes that "structural support" is a necessary element in the "part of the building" analysis, but no such element is required by the Policy either expressly or implicitly. (Doc. 54-2). Defendant's creative "interpretation" has created a new hurdle to coverage where none existed. Now, retaining walls that are "part of" the building must *also* give the building "structural support" (however the company defines that) before it will keep its coverage promise to the insured. This new prerequisite for coverage was neither bargained for, nor agreed to. *Id.* It, therefore, has no application in this case. "When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Ass Kickin Ranch, LLC*, 2012 S.D. 73, 822 N.W.2d 724, 727. "This burden is satisfied when the insurer shows the claim '*clearly* falls outside of policy coverage.'" *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, 741 N.W.2d 228, 234; *see also Hometown Plumbing & Heating Co. v. Secura Ins. Co.*, 815 N.W.2d 779 (Table), at *4 (Iowa Ct. App. 2012). Defendant's "structural support" condition is neither defined, nor suggested in the Policy.   As such, Defendant's argument in favor of this interpretation fails as a matter of law.

### a. Defendant Has Admitted the Wall Was Attached to the Building.

There is one critical fact raised in Defendant's Response that beautifully illustrates Defendant willingness to "gas light" both Lead GHR and the Court.  That is the issue of whether

the wall was attached to the Golden Hills Resort. In its Response, Defendant argues that the wall was "not attached to" the hotel. (Doc. 57, at pp. 8-9). This argument stands in stark contrast to its sworn testimony.

During the deposition of its Rule 30(b)(6) designee, Larry Eversole, Defendant was asked directly about this issue:

> Q       Is it the position of American States that the retaining wall was not a structure?
>
>          . . . .
>
> A       I didn't say it wasn't a structure.
>
> Q       (By Mr. Goodsell) It is a structure?
>
> A       It is a structure.
>
> Q       And we know the structure is attached to the building?
>
> A       *It is attached to the building.* It's not a part of the building.
>
> Q       So it's the position of American States *it's attached to the building* but it's not a part of the building?
>
> A       *Correct.*

(Doc. 54-5, ASIC 30(b)(6) Depo., at 38:17-25, 39:1-4) (emphasis added). Despite this clear testimony, Defendant now argues to the Court that the wall was *not* attached to the building. (Doc. 57, pp. 7-8). This is, of course, impermissible. In fact, both Eighth Circuit and South Dakota law prohibit parties from arguing an inconsistent factual position on matters sworn to in deposition testimony.  "It is elementary law that [a party] cannot claim a better version of the facts than he has previously asserted under oath."  *U.S. ex rel. Crow Creek Sioux Tribe v. Hattum Family Farms,* 102 F.Supp.2d 1154, 1159 (D.S.D. 2000). *See also Dartt*, 484 N.W.2d at 897; *Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 463 (S.D. 1991); *Waddell v. Dewey Cty.*

*Bank,* 471 N.W.2d 591, 595 n. 3 (S.D. 1991); *Heer v. State,* 432 N.W.2d 559, 567 (S.D. 1988);

*Drier v. Perfection, Inc.,* 259 N.W.2d 496, 508 (S.D. 1977).

The United States Supreme Court has also adopted this rationale.  When considering

contradictory statements made by a party, the Court stated:

> The lower courts, in somewhat comparable circumstances, have found a similar need for
> explanation. They have held with virtual unanimity that a party cannot create a genuine
> issue of fact sufficient to survive summary judgment simply by contradicting his or her
> own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that
> party's earlier sworn deposition) without explaining the contradiction or attempting to
> resolve the disparity.

*Cleveland v. Policy Management Systems Corp*., 526 U.S. 795, 806-07, 119 S.Ct. 1597, 1603-04,

143 L.Ed.2d 966 (1999) (citations omitted). Here, Defendant is attempting to circumvent this

basic principal. Despite clearly and unambiguously stating that the wall is attached to the

building in its deposition, Defendant now argues to the Court a better version of facts than what

was sworn to in its deposition. Defendant's effort to create a fact issue in light of this admission

cannot be accepted. Defendant's admission is dispositive of whether the wall and hotel were

connected.

**b. The Wall Was One Wall With Two Joints.**

Even if the Court were to set aside Defendant's admission, Defendant's argument makes

little sense.  According to Defendant, the wall at issue was actually three walls because it had

two joints, one made of cinder block tied to the YMCA building, and one made of poured

concrete tied to the hotel.  (Doc. 57, p. 9). Defendant's argument lacks merit.

Mr. Duckett, Plaintiff's engineering expert, explained this during his deposition.

"[w]hether there is a joint in a wall or not, it's still one wall. It's still retaining all the same soil.

We don't say that there is two walls there because there's a joint there." (Doc. 50-27, Deposition

of Mark Duckett ("Duckett Depo.") 39:25; 40:1-3). Considering that the most famous walls in

human history, this explanation makes sense.  The Great Wall of China, Hadrian's Wall, the Berlin Wall, all have numerous joints and turns. Yet, they are each still universally identified as singular walls. The fact that the wall had joints in it does not mean it was three separate walls; it was one wall, with one purpose. It was used to create space for the hotel, and it was used to retain the soil supporting the parking lot and tunnel. It just had two joints in it.  Defendant's argument on this point is unpersuasive.

### c. In this instance, the most natural meaning of "part of" is "attached to."

Next, Defendant argues that even though the wall was attached to the building, it was not a "part of" the building.  To illustrate this argument, Defendant analogizes the wall and hotel to a staple in a piece of paper. (Doc. 57, p. 9). Defendant suggests that a "staple does not become paper when it becomes fastened to it." *Id.*

Although this is true, in Defendant's example the staple would become part of an overall "document." Defendant's "document" example is actually very instructive here. Even though the document, like the building is capable of being deconstructed into parts, once it is assembled and connected with its addendum parts, it becomes a single unit. It becomes one document, one object, or in this case, one building.

Lead GHR does not deny that there is a difference between a retaining wall and a building. For example, unlike a building which creates space by enclosing it, a retaining wall creates space by dividing it.  Specifically, this wall created space on the outside for the essential functions of the hotel, such as parking, and access to the service entrance.  (Doc. 54-3, Preliminary Expert Report of Mark Duckett). In addition, it was used to create the space for the tunnel which was used by hotel guests to access the pool and fitness facilities at the YMCA.

Third Affidavit of Nathan R. Oviatt "*Third Oviatt Aff.*," Exhibit ("Ex.") A, Deposition of Perry

Roth ("Roth Depo.") 25:13-15.

In light of the critical functions the wall provides for the hotel, once the two are

connected with concrete and rebar, they (like a completed document) become a single unit. Mr.

Duckett explained this as follows:

A          The other aspect of it is: Because this hotel was built on a sloping mountain or
           hillside, terracing or benching had to be performed to provide level access
           roadways, parking, in the current configuration of the GHR building, it can't exist
           without that portion of the wall retaining the . . . soil.

           So, for example, at the very base where that twelve foot dimension that we talked
           about earlier, that's at a lower portion of that wall, right on the other side of the
           wall the earth is a minimum of twelve feet above that. If that wall weren't an
           integral part of the building, the form and function of the building as it exists
           today couldn't exist. You would not have access to that service area. There would
           be less parking.

(Doc. 50-27, Duckett Depo., at 52:16-25; 53:1-4). This particular wall provided the necessary

space for a number of critical functions of the hotel *and* it was attached to the hotel. It was "part

of" the hotel in its most basic sense.

Nothing raised in Defendant's Response refutes the conclusion that the retaining wall is

part of the building.  Therefore, partial summary judgment is appropriate on the first element of

Count I, and Plaintiff respectfully requests the Court enter an order finding that the retaining wall

at issue was "covered property" under the Policy.

### c. Structural Support is Not Required by the Plain Language of the Policy.

Additionally, Defendant once again argues that "part of" a building requires "structural

support for" a building. (Doc. 57, at p. 10). However, this requirement is not suggested, let alone

stated, in the Policy. (Doc. 54-2).  Instead, it has interpreted this contract in a way that creates an

additional hurdle, and therefore, an additional exclusion, where none is expressly stated in the

Policy. South Dakota law prohibits this type of post-occurrence underwriting. Insurers seeking to deny coverage have the burden to show that the claim clearly falls outside of policy coverage. *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, 822 N.W.2d 724, 727; *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, 741 N.W.2d 228, 234.   Here, Defendant's "interpretation" cannot satisfy this burden.

As set forth in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Doc. 52, at p. 6), "part" simply means a "section" which when combined with others "make up the whole of something" *Id.* There is no question that the wall was "combined" with the building.  It was attached to it with concrete and rebar.

As discussed above, this wall created the necessary space for the functions of the hotel. Things like parking, recreation, and service access are made available by virtue of the wall and the space it creates. The fact that the wall does not give the building "structural support" is irrelevant. The "structural support" limitation is never discussed at all, let alone in clear and explicit terms. It is a "strawman" to be knocked down to discourage insureds from pursuing claims.

Lead GHR contracted with American States for collapse coverage for retaining walls that are "part of" the building, not retaining walls that are "part of and give structural support to" the building. (Doc. 54-2). Even Terry Caudill, the Western Dakota Insurance agent who sold the Policy, believed the wall was covered property because it was attached to the building.  *Third Oviatt Aff.*, Ex. B, Caudill Depo., 47:19-25; 48:1-2.) Similarly, Ron Johnson, another agent at Western Dakota Insurers, agreed that "part of and attached to are synonymous." (Doc. 64-12, Deposition of Ron Johnson ("Johnson Depo."), at 19:11-13). The fact that the wall was "part of" the building is beyond reasonable factual dispute.

Because the Policy at issue provides coverage for retaining walls which are "part of" the hotel, and because the wall at issue meets the most natural definition of "part of a building," and because the agents who sold the Policy understood the Policy to cover retaining walls which were attached to the building, there is no reasonable dispute that the retaining wall is covered property under the Policy.   As such, Plaintiff respectfully requests the Court enter an Order granting Plaintiff's Motion for Partial Summary Judgment by finding that the wall at issue was "covered property" under the Policy.

### 2. Defendant's "Causation" Argument Presents Questions of Fact.

Next, Defendant contends that even if the wall was covered property, it was caused by an excluded peril. (Doc. 57, at p.12). This argument, however, presents issues of breach and resulting damages *not* raised by Plaintiff's Motion. *See Bowes Construction, Inc. v. SD Dept. of Transp.*, 2010 SD 99, ¶ 21, 793 N.W.2d 36, 43. In other words, Defendant's argument is *imprecise,* because of the Defendant's failure to appreciate that "partial" summary judgment is permitted on individual element of a claim.   *See supra.* Lead GHR acknowledges that Defendant has produced at least some evidence, in the form of the Haag Report, to support its position on the cause of loss in this case.[4] It is because of this evidence that Lead GHR did not move for summary judgment on the issue of Defendant's breach, the second element of the claim.   The jury must determine whether the wall collapsed due to water and soil pressure, or decay.   This is a factual dispute which cannot be resolved without weighing the credibility and competency of the evidence.

---

[4] The reasonableness of Defendant's reliance on this evidence remains to be determined. *See Mordhorst v. Dakota Truck Underwriters and Risk Admin. Serv's*, 2016 S.D. 70, 886 N.W.2d 322.

### a. "Anti-Concurrent Causation" Clause

Even though the jury will be asked to determine the actual cause of the collapse, there remains a critical (and potentially dispositive) dispute regarding the applicability of the "Anti-Concurrent Causation" clause in this case. Because the jury's finding on causation is hugely affected by the Court's resolution of this issue, it is prudent to decide this now, rather than on the eve of trial. Although, this may more appropriately be addressed as a motion in limine, it serves the principal of judicial economy to address this question now.

The applicable Policy language reads as follows:

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
…

**b**. Earth Movement

…

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.
…

**g.** Water

**(1)**  Flood, Surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**…**

**(4)** Water under the ground surface pressing on, or flowing or seeping through;

    **(a)** Foundations, walls, floors or paved surfaces;

(Doc. 54-2, Causes of Loss – Special Form (AMS-GHR 000070-71)). The parties agree that coverage for collapse caused by decay is specifically "given back," but disagree about the effect of the "Anti-Concurrent Causation" clause on the "Additional Coverage- Collapse" provision.

In support of its Motion for Partial Summary Judgment, Lead GHR contends that "general exclusions listed in the policy do not modify or qualify the additional collapse coverage." (Doc. 52, at 15 (citing *Ken Johnson Properties, LLC v. Harleysville Worcester Ins. Co.*, Civ. No. 12-1582, 2013 WL 5487444, * 15 (D. Minn. Sept. 30, 2013) (citing *State Auto. Mut. Ins. Co. v. R.H.L., Inc.*, No. 07-1197, 2010 WL 909073, at * 12 (W.D. Tenn. Mar 12, 2010); *Young Sook Pak v. Alea London Ltd.*, Civ. No. 1:08-CV-0824, 2009 WL 2366549, at * 7 (M.D. Penn. July 30, 2009), *see also Tabernacle-The New Testament Church v. State Farm Fire and Cas. Co.*, 616 Fed. Appx. 802 (6th Cir., 2015)).

In response, Defendant attempts to distinguish the overwhelming authority identified by Lead GHR, and argue that because the additional collapse "give back" and the "Anti-Concurrent Causation" clause do not conflict, the specific coverage "given back" is still limited by the general exclusion.   (Doc. 57, pp. 15-19). Defendant's analysis ignores the obvious *conflict* created by the facts presented here.

Keep in mind that the Policy provides *specific* coverage for the collapse of a retaining wall (Doc. 54-2, AMS-GHR000076), and the purpose of a retaining wall is to retain earth and water.  By its very nature, retaining walls are under a near constant state of pressure from earth and water. Even Defendant's expert agrees that retaining earth is the fundamental purpose of the subject retaining wall. *Third Oviatt Aff.*, Ex. C, Deposition of David Teasdale ("Teasdale Depo."), at 47:20-22. Thus, lateral pressure from earth and water are the loads that retaining walls are designed to withstand.

Given this, if the additional-collapse "give back" for retaining walls is going to have *any* meaning, the "Anti-Concurrent Causation" clause cannot preclude coverage for decay because the weight exerted by the soil is *always* going to contribute (even if minimally) to the collapse of even a wall compromised by decay. This would render the "Additional Coverage - Collapse" a nugatory because nothing would ever be "given back" regarding retaining walls. The insurer could always claim that water and soil pressure contributed to the loss.

There is conflict between the "Additional Coverage - Collapse" and the "Anti-Concurrent Causation" clause. "Conventional principles of contract interpretation require agreements to be construed in their entirety giving contextual meaning to each term. When provisions conflict, however, and full weight cannot be given to each, 'the more specific clauses are deemed to reflect the parties' intentions—a specific provision controls a general one.'" *Bunkers v. Jacobson*, 653 N.W.2d 732, 738, 2002 S.D. 135, ¶ 15 (S.D., 2002) (citation omitted). In this case, the general clause is the "Anti-Concurrent Causation" clause, and the specific clause is the "Additional Coverage - Causation" provision.

The general "Anti-Concurrent Causation" clause has been previously discussed. The "Additional Coverage - Causation" provision provides:

## D. Additional Coverage - Collapse

The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in D.1. through D.5. below.

**1.** With respect to buildings:

**a.** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose; …

**2.** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form

14

or contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

…

       **b.** Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

…

       **e.** Weight of rain that collects on a roof;

       **f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a** through **1.d** *do not limit* the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in **2.a.**, **2.d.** and **2.e.**

**3.** With respect to the following property:

. . .

       **h.** *Retaining walls* . . .

if the collapse is caused by a cause of loss listed in **2.b.** through **2.f**, we will pay for loss or damage to that property only if:

       **a.** Such loss or damage is ***a direct result*** of the collapse of a building insured under this Coverage Form; and

       **b.** The property is Covered Property under this Coverage Form

(Doc. 54-2, AMS-GHR 000075-76 (emphasis added)). Under the express terms of the Policy, a collapse caused by decay, as described in **2.b.**, only needs to be "***a direct cause***," NOT the exclusive cause. *Id.* There is no specific language addressing the effect of the "Anti-Concurrent Causation" clause on the special coverage form, but there are specific coverage grants which facially conflict with the general exclusions.

For example, with respect to water, Section **2.e.**, provides coverage for collapse that occurs as a result of "[w]eight of rain that collects on the roof." *Id.* Obviously, "weight of rain that collects on a roof" would ordinarily be excluded under the "Water" exclusion in Section **g.** of the Policy. *Id.*, at AMS-GHR000071. If the Court were to accept Defendant's argument and find that the "Anti-Concurrent Causation" clause and the "Additional-Collapse Coverage" form were not in conflict, then the "weight of rain" coverage is entirely meaningless - and the insured would have purchased nothing but an empty promise. Coverage would never be extended in this situation because rain water will have always contributed to the collapse.

Another example of this conflict is illustrated by the facts of this case. Here, it is undisputed that the purpose of this retaining wall was to retain earth. Even Defendant's expert agreed with this obvious conclusion. *Third Oviatt Aff.*, Ex. C, Teasdale Depo., at 47:20-22. Thus, lateral forces from soil are going to regularly press on the wall. If the "Anti-Concurrent Causation" clause applied, there could never be coverage for retaining wall collapse because "Earth Movement" is excluded under the Policy. (Doc. 54-2, at AMS-GHR000070). Because collapse coverage is specifically extended to retaining walls that are part of the building, this cannot be the case. There is an inherent conflict between the "Anti-Concurrent Causation" clause and the "Additional Coverage - Collapse" provision.

The only way to harmonize these two competing forms is to conclude that the "Anti-Concurrent Causation" clause applies *except* in those situations in which a "give back" is invoked. *See Ken Johnson Properties, LLC*, Civ. No. 12-1582, 2013 WL 5487444, * 15; *Young Sook Pak v. Alea London Ltd.*, Civ. No. 1:08-CV-0824, 2009 WL 2366549, at * 7. Once a "give back," like the additional collapse coverage form is invoked, the "Anti-Concurrent Causation" clause does not apply. Here, the "give back" is triggered, and the general "Anti-Concurrent

Causation" clause must give way to the specific "give back."  Because there is clear conflict between the general exclusion, and the specific collapse coverage form, the specific provision must prevail to effectuate the intent of the parties.

### b. The "Additional Coverage - Collapse" Provision Applies

Finally, Defendant argues that Lead GHR cannot meet its burden of proving the "Additional Coverage - Collapse" applies. (Doc. 57, at pp. 19-20).  Defendant makes two arguments on this point: (1) the hotel can still be occupied, and (2) Mr. Duckett's opinion testimony is not "legitimate" evidence of decay.

### i. "Part of the Building" Could Not Be "Occupied."

Defendant's first argument is that the "Additional Coverage-Collapse" Provision is not triggered here because the hotel can still be "occupied for its intended purpose."  (Doc. 57, at pp. 19-21). For this argument, Defendant relies on Section **D.1.a.** of the Policy, which reads:

> Collapse means an abrupt falling down or caving in of a building with the result that the building or part of the building cannot be occupied for its intended purpose

(Doc. 54-2, at AMS-GHR000075). Defendant argues that because the hotel continued to operate as a hotel, the wall's collapse does not meet the definition of "collapse" as required by Section **D.1.a.**

Defendant's argument is a slight-of-hand. The argument is accomplished by moving the conversation from the retaining wall, which is part of the building, to the whole building. However, because Section **D.1.a.** *specifically* accounts for the collapse of "part of the building," it is immaterial whether the whole building was able to be occupied. *Id.* If the Court agrees that the wall is "part of the building," then there is no doubt that the wall abruptly fell, and could no longer be used as intended.

This Policy specifically provided coverage for a litany of structures that cannot be "occupied" in the traditional sense. (Doc. 54-2, at AMS-GHR000076). The Policy extends collapse coverage for things like: (1) yard fixtures, (2) fences, (3) radio and television antennas, and (4) *retaining walls*. *Id.* (emphasis added). Even though none of these structures can be "occupied" in the same sense of a hotel, they are specifically identified as structures covered under the "Additional Coverage - Collapse" provision.

To reconcile this, one must look to the definition of "occupied" to determine its plain and ordinary meaning. "Occupied" means simply to be "used by someone." English Oxford Living Dictionaries, https://en.oxforddictionaries.com/definition/ occupied (last visited June 19, 2018). This definition is harmonious with the collapse coverage extended to the enumerated structures. If yard fixtures, or fences, or antennas, or *retaining walls* abruptly fall down, and cannot be used as intended, they have collapsed as defined by the Policy. (Doc. 54-2, at AMS-GHR000076). As discussed, the purpose of the retaining wall was to retain earth and soil, and create space. Its collapse thwarted that intended purpose.

Defendant's argument that the building could still be occupied after the collapse is misdirection. Under the Policy, only the collapsed "part of the building" needs to be unable to be occupied or used as intended. Defendant's argument on this point should be rejected.

### ii. Legitimate Evidence of "Decay."

Defendant's final argument against the "Additional Coverage - Collapse" provision is that it claims there is no "legitimate" evidence of decay. By in large, this argument is a summary of Defendant's Motion to Exclude the Expert Testimony of Mark Duckett. (Doc. 49). Therefore, Lead GHR incorporates its response to Defendant's motion on this issue.[5]

---

[5] Defendant argues in FN 15 that "Plaintiff had put forth no evidence of similar precipitation amounts or rates in Lead prior to this event, and acknowledges it made no such investigation." (Document 57, p. 22). This is a highly misleading statement. Defendant's expert, David Teasdale, located what he believed to be reliable whether data

18

Aside from the arguments already briefed, Defendant contends that the "ancient rule" of *expressio unius est exclusion alterius* (the expression of one thing is the exclusion of another) is fatal to Mr. Duckett's testimony because he does not distinguish between "decay" and "deterioration." (Doc. 57, p. 22). Defendant can identify zero authority for the proposition that this principal is applicable in an insurance contract interpretation setting. *Id.* Instead, Defendant cites to the dissenting opinion in *Haman v. First Nat'l Bank in Sioux Falls*, 115 N.W.2d 883, 887, for the proposition that this rule applies to contract as well as statutory interpretation.  The Defendant never advises the Court that this is not the law in South Dakota.  It is very troubling that Defendant is trying to pass off a dissenting opinion as a rule of law, by this omission. There is certainly no authority for the proposition that this "ancient rule" applies in an insurance contract setting, where the bargaining positions of the parties are so imbalanced.  Defendant's invocation of *expressio unius est exclusion alterius* lacks merit.

Moreover, assuming *arguendo*, the "ancient rule" applied, it would have no bearing here because "decay" and "deterioration" mean the same thing. Lead GHR has already set out why it believes that "decay" and "deterioration" are synonymous. (Doc. 52, at p. 19). Lead GHR incorporates those arguments by reference. The fact that "deteriorate" is used to define "decay," *id.* at 20, renders *expressio unius est exclusion alterius* a nullity here.  How could the inclusion of one thing exclude the other when they both mean the same thing? Defendant's argument on this point should be considered nonsense.

---

from Lead, and it revealed at least one rain of grater or equal magnitude as event that preceded this collapse. (Document 50-37, Duckett Rebuttal Report, p. 4 (stating, "Even if one were to accept the authenticity and accuracy of the source cited by Teasdale and Behrens without question, their own analysis supports the fact that the wall previously had experienced a rain event of greater magnitude than it experienced on the incident date, and the wall did not collapse at that time.")  Similarly, Defendant asserts without any reliable basis that the weep holes in the wall were clogged on the incident date.  There are no photographs or witness reports of the weeps being clogged on or before the incident date.  Mr. Teasdale merely assumed they were in the same condition when he visited the site nineteen days after the collapse. *Third Oviatt Aff.*, Ex. C, Teasdale Depo. 64:1-18.

Moreover, because the "Additional Coverage - Collapse" is triggered, and because it specifically provides coverage for that which would otherwise be excluded under the general "Anti-Concurrent Causation" clause, the general must give way to the specific. As such, Plaintiff respectfully requests the Court enter an order finding that the "Additional Coverage - Collapse" provision is triggered by the facts set forth herein, and that such provision supersedes the "Anti-Concurrent Causation" clause relied on by Defendant.

### 3. Defendant's Investigation

Defendant invests the final several pages of its Response defending its investigation into Lead GHR's claim. None of the arguments made, or the issues raised, are related to Plaintiff's Motion for Partial Summary Judgment. (Doc. 52). Again, Defendant fails to understand the "partial" nature of this Motion. Defendant's arguments on these points go to Plaintiff's claims for Bad Faith and Punitive Damages, which are not the subject of this Motion.  In other words, these arguments are *irrelevant* to the issue under consideration.  To the extent appropriate, Plaintiff incorporates by reference its arguments and authorities set forth in its Response to Defendant's Motion for Summary Judgment. (Doc. 60).

<u>CONCLUSION</u>

Because Defendant can point to no facts which raise any material dispute on whether the retaining wall at issue was "covered property" under the Policy, Plaintiff respectfully requests the Court enter an Order granting Plaintiff's Motion for Partial Summary Judgment, and finding that Defendant's "enforceable promise" to Lead GHR included coverage for the retaining wall at issue in this case.

Additionally, Plaintiff respectfully requests the Court enter an order finding that the "Additional Coverage - Collapse" provision is triggered by the facts set forth herein, and that such provision supersedes the "Anti-Concurrent Causation" clause relied on by Defendant.

Dated this 13th day of July.

GOODSELL QUINN, LLP,


/s/   Nathan R. Oviatt
Nathan R. Oviatt
G. Verne Goodsell
GOODSELL QUINN, LLP
246 Founders Park Dr., Suite 201
P.O. Box 9249
Rapid City, SD 57709-9249
Tel:  (605) 343-3000

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LEAD GHR ENTERPRISES, INC. formerly d/b/a GOLDEN HILLS RESORT, | ) ) ) | Civ. 16-5026-JLV |
| Plaintiff, | ) ) | |
| v. | ) ) | **CERTIFICATE OF SERVICE** |
| AMERICAN STATES INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

I hereby certify that on the 13th day of July, 2018, I sent to:

> Jack H. Hieb
> One Court Street
> Post Office Box 1030
> Aberdeen, SD  57402-1030
> JHieb@rwwsh.com
>
> Daniel W. Berglund
> Patrick P. Jarosch
> Grotefeld Hoffman Schleiter
> Gordon, Ochoa & Evinger LLP
> 150 South Fifth Street, Suite 3650
> Minneapolis, MN  55402
> dberglund@ghlaw-llp.com
> pjarosch@ghlaw-llp.com

by Notice of Electronic Filing generated by the *CMECF* system, a copy of the **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** relative to the above-entitled matter.

BY: ___*/s/ Nathan R. Oviatt*_____
Nathan R. Oviatt